## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

THE PENINSULA AT ST. JOHN'S CENTER
CONDOMINIUM ASSOCIATION, INC.,

     Plaintiff,

v.                                                          Case No. 3:22-cv-00792-TJC-LLL

AMERISURE INSURANCE COMPANY,
and AMERISURE MUTUAL INSURANCE
COMPANY,

     Defendants.

_____/

### SECOND AMENDED COMPLAINT

Plaintiff, THE PENINSULA AT ST. JOHNS CENTER CONDOMINIUM ASSOCIATION, INC., sues Defendants, AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, and alleges as follows:

### Parties and Jurisdiction

1.     This is an action for damages that exceed Thirty Thousand and No/100 Dollars ($30,000.00) exclusive of interest, costs and attorneys' fees.

2.     Plaintiff The Peninsula at St. Johns Center Condominium Association, Inc. (the "Association") is a Florida not-for-profit corporation, formed pursuant to Florida law, with its principal place of business in Jacksonville, Duval County, Florida.

3.     Defendant, Amerisure Insurance Company ("AIC"), is a corporation organized and existing under the laws of the state of Michigan, with its principal place of business in Farmington Hills, Oakland County, Michigan.

4.      Defendant, Amerisure Mutual Insurance Company ("AMIC"), is a corporation organized and existing under the laws of the state of Michigan, with its principal place of business in Farmington Hills, Oakland County, Michigan.

5.      AIC and AMIC are subject to the personal jurisdiction of this Court.

6.      The laws of Florida apply to the claims asserted herein, including the interpretation of the insurance contracts at issue and the rights and obligations of the parties pursuant to those contracts.

7.      Venue is proper in Duval County, Florida because it is where the subject property is situated and where the causes of action accrued.

**General Allegations**

8.      This is an action for breach of a commercial general liability insurance policy, breach of a commercial umbrella liability policy and for declaratory relief arising out of a lawsuit against The Auchter Company ("Auchter"), among others, styled as *The Peninsula at St. John's Center Condominium Assoc., Inc. v. The Auchter Company, et. al.*, Case No. 2013-CA-7176 in the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida (the "Peninsula Lawsuit").

9.      The Association brings this action against AIC and AMIC as the assignee of Auchter, as set forth more fully below.

10.      The Peninsula Lawsuit arose out of the construction of a 38-story condominium property consisting of 234 residential units, two commercial units, and 495 parking spaces, located at 1431 Riverplace Boulevard, Jacksonville, Florida 32207 (the "Project").

11.      The Project was developed by St. John's Phase 2, LLLP ("Developer").

2

12.     On or about June 10, 2005, Developer entered into an agreement with Auchter as the general contractor for construction of the Project (the "Construction Contract").

13.     On or about November 10, 2011, Developer turned the Project over to the Association's unit owners as Developer's successors in control and management of the Project.

14.     Upon the transfer of association control from Developer to unit purchasers, Developer provided the Association with a report titled "Turnover Evaluation Report" dated April 26, 2013 (the "Turnover Evaluation Report").

15.     The Turnover Evaluation Report identified a number of areas of concern with respect to both the condition of certain common elements, as well as certain common elements' compliance with the Contract Documents and/or the controlling building codes (the "Construction Deficiencies").

16.     The Construction Deficiencies identified in the Turnover Evaluation Report included, among other things: structural deficiencies concerning post-tension cabling; water intrusion through the building envelope; lack of proper product approvals for the window systems; loss of adhesion of the exterior building finishes; insufficient boiler capacity; deficient brick anchoring and installation; defective balcony railings and slope; deficient waterproofing; canopy roof deficiencies; and other Construction Deficiencies.

17.     On July 23, 2013, the Association initiated the Peninsula Lawsuit by filing a complaint against Auchter, among others.

18.     In the Peninsula Lawsuit, the Association alleged that the Construction Deficiencies were: latent; not readily discoverable or observable; located throughout the Project, including the common elements; and due to defective work performed by Auchter.

19.     The Construction Deficiencies alleged by the Association included:

a.      application of stucco that exceeded tolerances allowed by the technical specifications of the Contract Documents;

b.      improper application of stucco, including curing, waterproofing and preparation of the stucco substrate that resulted in failure of the stucco to form the required bond, all of which allow uncontrolled water infiltration into the building and damage to building interiors;

c.      application of the stucco that resulted in voids at transitions to dissimilar materials, allowing water intrusion and damage to building interior;

d.      improper installation of roof flashing resulting in water intrusion;

e.      improper installation of sealants at the transition of dissimilar materials around the building envelope which results in water intrusion and damage to building interior;

f.      improper construction of the balcony floors with reverse slope or no slope causing water accumulation that contributes to water intrusion and damage to building interior;

g.      improper construction of balcony sliding glass doors;

h.      improper installation of the post-tension cabling and broken or un-tensioned cables that may require repair that will further damage unit interiors;

i.      failure to construct a water proofing system for the balconies which resulted in water intrusion;

j.      improper construction and installation of balcony railings;

k.      improper construction of the intersection of the balconies with the vertical walls that results in water intrusion to building interiors;

l.      deterioration of the interior framing located at exterior walls of the individual units due to water intrusion;

m.      insufficient concrete cover at reinforcement steel which resulted in premature corrosion of the system;

n.      improper construction of the window systems without obtaining a valid product approval pursuant to the Florida Building Code which contributed to water intrusion affecting interior moisture levels and deterioration of interior framing;

o.      improper approval and installation of windows without verification that the window system met structural requirements to provide the proper wind load resistance;

4

p.     improper installation of the fixed, single-hung and curtain wall window systems which results in water intrusion and structural instability including damage to interior framing, walls and floor coverings;

q.     failure to require or perform the test and balance of the building fresh air system which contributed to moisture build-up in the building's interior;

r.     failure to require or perform the test and balance of the Mechanical system's water supply;

s.     failure to require or perform test and balance of the Smoke Control system for the Project;

t.     failure to construct the garage screen system in a structurally sound manner;

u.     deficient installation of brickwork at the pool deck, railing and planter beds which resulted in premature deterioration of the systems; and deficient installation of garage brick façade;

v.     improper and deficient construction of masonry infill walls substantially contributing to stucco deficiencies;

w.     failure to install the required waterproofing and drainage for all planters which contributed to water intrusion;

x.     failure to install pool deck slab edge aluminum caps around all building perimeters which contributed to water intrusion;

y.     installation of concrete at the balconies that failed to achieve a positive slope away from the building;

z.     failure to construct a curb below the sliding glass doors to allow for the installation of water proofing at the balconies;

aa.     failure to identify the likelihood of condensate at all windows due to abandoning the original design of an insulated glass panel at fixed and operable windows;

bb.     failure to perform a rational analysis of the building smoke control system;

cc.     improper design of mechanical systems and/or construction deviations from the mechanical plans, specifications and energy codes in relation to construction of the building's exhaust and fresh air make-up systems and boiler system;

dd.     deficient installation of the swimming pool and spa resulting in water leaking into the garage space below;

ee.   failure to install pipe bollards in or adjacent to traffic lanes in violation of the building code;

ff.   defective gaskets in glass balustrade railings and defective welds in some railings;

gg.   failure to install and/or properly label fire doors and other required accessories at all required locations;

hh.   improper installation of the waterproof coating at the second level of the garage above the building lobby and first floor; deficient installation of waterproofing and damproofing, including garage damproofing and resulting damage; and

ii.   improper installation of concrete floors in mechanical rooms and garage resulting in slopes inconsistent with the requirements of the drawings and specifications.

20.   The Association's claims against Auchter in the Peninsula Lawsuit included negligent construction, breach of implied warranties of constructability, breach of statutory warranties, violation of the Florida Building Code and breach of the Construction Contract.

21.   During the Peninsula Lawsuit, the Court held that the Association succeeded to Developer's interests in the Construction Contract pursuant to Chapter 718, Florida Statutes.

22.   Additionally, on or about December 6, 2016, Developer assigned to the Association all of any remaining Developer's rights and claims arising under the Construction Contract, including all statutory and tort claims pertaining to the construction of the Project.

23.   AIC issued the following general commercial liability policy to Auchter as the Named Insured: AIC Policy CGL 2009278, effective 01/01/06-01/01/07 and 0/1/01/07-01/01/08 (the "CGL Policy"). Pertinent portions of the CGL Policy are attached hereto as Exhibit "A". On information and belief, AIC is in possession of a complete copy of the CGL Policy. If not, a complete copy will be provided upon request.

24.   AMIC issued the following Commercial Liability Umbrella policy to Auchter as the Named Insured: AMIC Policy CU 2009380, effective 01/01/06-01/01/07 and 0/1/01/07-

01/01/08 (the "CU Policy"). Pertinent portions of the CU Policy are attached hereto as Exhibit "B". On information and belief, AMIC is in possession of a complete copy of the CU Policy. If not, a complete copy will be provided upon request.

25.    The CGL Policy applies to property damage caused by an occurrence during the policy period.

26.    The general aggregate limit of the CGL Policy is $2,000,000.

27.    The CGL Policy includes Products-Completed Operations coverage with an aggregate limit of $2,000,000.

28.    The limit for each occurrence under the CGL Policy is $1,000,000.

29.    The CU Policy provides, in pertinent part, "We will pay on behalf of the insured the ultimate net loss in excess of the retained limit because of bodily injury or property damage to which this insurance applies." (internal quotation marks omitted).

30.    The CU Policy applies to property damage caused by an occurrence during the policy period.

31.    The occurrence limit of the CU Policy is $25,000,000.

32.    The aggregate limit of the CU Policy for Products-Completed Operations is $25,000,000.

33.    As set forth above, the Construction Deficiencies alleged in the Peninsula Lawsuit included damage to other property. The damage to other property alleged in the Peninsula Lawsuit occurred during the effective period of the CGL Policy and the CU Policy.

34.    On September 27, 2013, Auchter sent AIC and AMIC written notice of the Complaint filed by the Association against Auchter in the Peninsula Lawsuit (including a copy of

7

the Complaint) and demanded that AIC and AMIC undertake coverage of the claims and defense of the suit on behalf of Auchter.

35.     On October 15, 2013, AIC and AMIC issued a "Declination of Coverage" to Auchter declining to provide a defense or indemnity for the claims asserted against Auchter in the Peninsula Lawsuit. AIC's and AMIC's sole basis for declining to defend and indemnify Auchter was their contention that "Based on the allegations in the complaint the loss manifested after the expiration of the AIC policy period."

36.     On October 31, 2013, Auchter responded to AIC's and AMIC's Declination of Coverage with a detailed explanation of the reasons AIC and AMIC should reconsider their position.

37.     On January 27, 2014, AIC and AMIC responded to Auchter's October 31, 2013, letter and reaffirmed their denial of coverage and a defense.

38.     On June 9, 2016, Auchter provided AIC and AMIC with a copy of the Second Amended Complaint filed by the Association in the Peninsula Lawsuit and again requested that AIC undertake coverage of the claims and defense of the suit.

39.     On November 28, 2016, AIC and AMIC responded to Auchter's June 9, 2016, letter and again declined to provide coverage and a defense.

40.     Altogether, AIC and AMIC declined coverage for the claims asserted in the initial Complaint and the Second Amended Complaint filed by the Association, despite Auchter's insistence that AIC and AMIC provide coverage, on three separate occasions (the "Declination Letters").

41.     AIC and AMIC never issued a reservation of rights letter.

42.     The Peninsula Lawsuit spanned approximately eight years. During those eight years of litigation, Auchter and the Association participated in six mediations pursuant to various Case Management Orders rendered by the Court, participated in over 60 depositions, analyzed dozens of expert reports, and were apprised of the projected costs to repair the Construction Deficiencies and the legal arguments associated with the prosecution and defense of the claims.

43.     On June 22, 2021, Auchter and the Association conducted a settlement conference that included analysis by Auchter and the Association of competing theories of liability and estimates of costs to repair the Construction Deficiencies.

44.     On June 28, 2021, the Association and Auchter entered into a Settlement Agreement, which included an agreement by Auchter to a consent judgment and an agreement to assign of all of Auchter's rights under the CGL Policy and the CU Policy.

45.     On June 28, 2021, pursuant to the Settlement Agreement, Auchter executed a separate Assignment specifically assigning to the Association all rights, claims and causes of action against AIC and AMIC arising out of or relating to the Association's claims against Auchter in the Peninsula Lawsuit.

46.     On July 6, 2021, a Final Judgment was entered in the Peninsula Lawsuit in favor of the Association and against Auchter in the amount of $8,500,000.00 (the "Final Judgment"). A copy of the Final Judgment is attached hereto as Exhibit "C".

47.     The Association has retained the undersigned attorneys to bring this action and is obligated to pay a reasonable fee for their services. The Association is entitled to recover its reasonable attorney's fees incurred herein pursuant to Section 627.428, Florida Statutes.

48.     All conditions precedent to bringing this action have been waived, excused, performed or have otherwise occurred.

9

## COUNT I
### Breach of Insurance Contract Against AIC

49.     This is an action against AIC for breach of an insurance contract.

50.     The Association realleges and incorporates herein by reference the allegations in paragraphs 1 through 48, including all subparts, as if fully set forth herein.

51.     The CGL Policy is a written contract of insurance obligating AIC to defend and indemnify Auchter against any suit seeking damages because of property damage that takes place during the policy period and is caused by an occurrence.

52.     The initial complaint and all subsequent complaints filed by the Association in the Peninsula Lawsuit alleged facts that were subject to coverage under the CGL Policy, thereby triggering AIC's duty to defend and duty to indemnify Auchter.

53.     AIC breached its duties to defend and indemnify Auchter under the CGL Policy by refusing to defend and indemnify Auchter in the Peninsula Lawsuit.

54.     As a direct and proximate result of AIC's breach of its duty to defend and its duty to indemnify under the CGL Policy, Auchter suffered damages, including, but not limited to, the entry of Final Judgment against Auchter and other costs Auchter was forced to incur associated with the claims made against Auchter in the Peninsula Lawsuit.

WHEREFORE, the Association respectfully requests that the Court enter judgment against AIC awarding the Association damages in the amount of the Final Judgment recoverable against the CGL Policy, together with prejudgment interest, attorneys' fees pursuant to Section 627.428, Florida Statutes, costs, and such other and further relief as the Court deems just and proper.

## COUNT II
### Breach of Insurance Contract Against AMIC

55.     This is an action against AMIC for breach of an insurance contract.

56.     The Association realleges and incorporates herein by reference the allegations in paragraphs 1 through 48, including all subparts, as if fully set forth herein.

57.     The initial complaint and all subsequent complaints filed by the Association in the Peninsula Lawsuit alleged facts that were subject to coverage under the CU Policy.

58.     Based on the amount of the Final Judgment, the CGL Policy has been exhausted by the Final Judgment against Auchter.

59.     AMIC has materially breached the CU Policy.

60.     Specifically, AMIC expressly declined coverage and refused to indemnify Auchter against any of the claims asserted against Auchter in the Peninsula Lawsuit, including any losses or damages in excess of the coverage provided by the CGL Policy.

61.     To date, AMIC has failed to indemnify the Association, as assignee of Auchter, for any of the damages recovered against Auchter in the Peninsula Lawsuit.

62.     Additionally, AMIC failed and/or refused to provide a defense to Auchter as required by the CU Policy.

63.     Section I of the CU Policy states, in pertinent part: "We will have the right and duty to defend the insured against any suit seeking damages for...property damage when the underlying insurance does not provide coverage or the limits of underlying insurance have been exhausted" (internal quotation marks omitted).

64.     AIC did not provide coverage to Auchter pursuant to the CGL Policy, which was the underlying insurance identified in the CU Policy.

65.     AMIC's duty to defend Auchter against the claims in the Peninsula Lawsuit was triggered when the underlying insurance did not provide coverage. AMIC breached that duty when it failed and/or refused to defend Auchter.

66.     As a direct and proximate result of AMIC's breach of its duties under the CU Policy, Auchter suffered damages, including, but not limited to, the entry of Final Judgment against Auchter and other costs Auchter was forced to incur associated with the claims made against Auchter in the Peninsula Lawsuit.

WHEREFORE, the Association respectfully requests that the Court enter judgment against AMIC awarding the Association damages in the amount of the Final Judgment recoverable against the CU Policy, together with prejudgment interest, attorneys' fees pursuant to Section 627.428, Florida Statutes, costs, and such other and further relief as the Court deems just and proper.

## COUNT III
### Declaratory Judgment Against AMIC

67.     This is an action in the alternative against AMIC for declaratory relief.

68.     The Association realleges and incorporates herein by reference the allegations in paragraphs 1 through 48, including all subparts, as if fully set forth herein.

69.     Based on the amount of the Final Judgment, the CGL Policy has been or will be exhausted by the Final Judgment against Auchter.

70.     AMIC is obligated to indemnify the Association, as assignee of Auchter, for the balance of the Final Judgment that is not reimbursed by AIC under the CGL Policy.

71.     By virtue of its Declination Letters and its failure to respond to Auchter's demand for indemnity, AMIC disputes one or more of the allegations herein, including the allegation that AMIC owes a duty to indemnify Auchter against the claims asserted in the Peninsula Lawsuit.

72.     By reason of the foregoing, an actual and justiciable controversy exists between the Association, as assignee of Auchter, and AMIC regarding their respective rights and obligations under the CU Policy.

73.     An order from this Court will resolve the disputes between the Association and AMIC concerning their respective rights and obligations under the CU Policy.

74.     The Association is entitled to a declaratory judgment, *inter alia*, that:

a.     AMIC had and has a duty to indemnify Auchter against the claims brought by the Association in the Peninsula Lawsuit for the balance of the Final Judgment remaining after the CGL Policy is exhausted; and

b.     AMIC is liable to the Association, as assignee of Auchter, for the balance of the Final Judgment entered in the Peninsula Lawsuit against Auchter that is not reimbursed by AIC under the CGL Policy.

WHEREFORE, the Association respectfully requests that the Court enter judgment against AMIC awarding the Association the relief outlined above, together with prejudgment interest, attorneys' fees pursuant to Section 627.428, Florida Statutes, costs, and such other and further relief as the Court deems just and proper.

Dated this 5th day of January 2023.

**REGAN ATWOOD, P.A.**

By:   */s/ Charles R. Walker, Jr.*
Jeffrey C. Regan, Florida Bar No. 436550
Charles R. Walker, Jr., Florida Bar No. 486485
9905 Old St. Augustine Rd. Suite 400
Jacksonville, FL  32257
(904) 356-1300; (904) 356-8050 Facsimile
jregan@reganatwood.com
cwalker@reganatwood.com
courtpapers@reganatwood.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on this 5th day of January, 2023, I electronically filed the foregoing through the Middle District of Florida CM/ECF, which will complete service by furnishing a true and correct copy of the foregoing via electronic mail to the following:

Andrew F. Russo, Esq.
Rywant, Alvarez, Jones, Russo & Guyton, P.A.
302 Knights Run, Suite 1000
Tampa, FL 33602
arusso@rywantalvarez.com

*/s/ Charles R. Walker, Jr.*
Attorney

# COMMON POLICY DECLARATIONS

**AMERISURE INSURANCE COMPANY**

SERVICE OFFICES:

FIRST YEAR:                    1995

POLICY NUMBER:           GL 2009278040007
GROUP NUMBER :
ACCOUNT NUMBER: 11034203

PREMIUM AMOUNT DUE: $    271,872.54

RENEWAL OF:              GL 2009278030006

NAMED INSURED: THE AUCHTER COMPANY
               (SEE ENDORSEMENT A)
MAILING ADDRESS:
C/O CONSTRUCTION INSURANCE
2110 HERSCHEL STREET
JACKSONVILLE          FL 32204

PRODUCER NUMBER:   846319 - 150
PRODUCER NAME AND ADDRESS:
CONSTRUCTION INSURANCE CORP.

2110 HERSCHEL ST.

JACKSONVILLE          •  FL  32204

POLICY PERIOD:  FROM 01/01/2007 TO 01/01/2008    AT 12:01 A.M. STANDARD TIME
                AT YOUR MAILING ADDRESS SHOWN ABOVE.  DATE ISSUED: 01/19/2007

NAMED INSURED'S BUSINESS:  CONTRACTOR
FORM OF BUSINESS:    CORPORATION
AUDIT PERIOD:    ANNUAL

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THE
POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  |  | PREMIUM |
|---|---|---|
| BOILER AND MACHINERY COVERAGE PART | $ | 0.00 |
| COMMERCIAL AUTO COVERAGE PART | $ | 0.00 |
| COMMERCIAL CRIME COVERAGE PART | $ | 0.00 |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $ | 263,954.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | $ | 0.00 |
| COMMERCIAL PROPERTY COVERAGE PART | $ | 0.00 |
| STATE TAX | $ | |
| MUNICIPAL SURCHARGE | $ | |
| NEW YORK FIRE FEE | $ | |
| FLORIDA - CITIZENS PROPERTY INSURANCE SURCHARGE 2004 | $ | |
| FL HURRICANE CATASTROPHE FUND EMERGENCY ASSESSMENT | $ | 2,639.54 |
| FL INSURANCE GUARANTY ASSOCIATION ASSESSMENT 2006 | $ | 5,279.00 |
| TOTAL | $ | 271,872.54 |

FORMS APPLICABLE TO ALL COVERAGE PARTS:

153032

COUNTERSIGNED            _____    BY  _____
                              (DATE)                  (AUTHORIZED REPRESENTATIVE)



**Exhibit A**

ATFM55

ENDORSEMENT NO.    A

# NAMED INSURED ENDORSEMENT

The Named Insured and Mailing Address portion in the Declarations are amended to read as follows:

THE AUCHTER COMPANY
AUCHTER/ELKINS, A JOINT VENTURE
AUCHTER/ELKINS/LODESTAR/PARRIS JOINT VENTURE

C/O CONSTRUCTION INSURANCE
2110 HERSCHEL STREET
JACKSONVILLE, FL 32204

**POLICY NUMBER:**   GL 2009278

**INSURED:**   THE AUCHTER COMPANY

**Exhibit A**



COMMERCIAL GENERAL LIABILITY COVERAGE PART
DECLARATIONS PAGE

POLICY NUMBER:   GL 2009278040007        EFFECTIVE DATE: 01/01/2007

NAMED INSURED

THE AUCHTER COMPANY          (SEE ENDORSEMENT A)

LIMITS OF INSURANCE

| | |
|---|---|
| GENERAL AGGREGATE LIMIT | 2,000,000 |
| (OTHER THAN PRODUCTS-COMPLETED OPERATIONS) | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | 2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | 1,000,000 |
| EACH OCCURRENCE LIMIT | 1,000,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | 50,000 |
| MEDICAL EXPENSE LIMIT | 5,000 ANY ONE PERSON |

LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY

FOR DESCRIPTIONS OF THE INSURED PREMISES, PLEASE REFER TO THE ATTACHED
SCHEDULES.

CLASSIFICATIONS

ALL APPLICABLE CLASSIFICATIONS MAY BE FOUND IN THE ATTACHED SCHEDULES.

FORMS APPLICABLE

| | | | |
|---|---|---|---|
| CG 70 06 09 87 | AN 12 20 04 06 | EN DT  A | EN DT  B |
| EN DT  C | IL 70 11 05 96 | M  10 89 01 97 | M  21 89 11 97 |
| CG 21 70 11 02 | M  21 79 03 04 | CG 22 34 07 98 | CG 22 79 07 98 |
| CG 25 03 03 97 | CG 71 06 10 99 | CG 21 86 12 04 | EB 70 01 11 97 |
| IL 00 21 07 02 | IL 70 27 07 01 | CG 70 71 09 99 | CG 21 47 07 98 |
| M  10 74 01 93 | IL 00 17 11 98 | | CG 21 60 09 98 |
| IL 70 25 08 00 | IL 02 62 07 02 | CG 70 42 04 03 | CG 21 67 12 04 |
| CG 70 48 03 04 | | CG 70 50 03 04 | CG 70 49 09 05 |
| | CG 00 01 12 04 | CG 04 37 12 04 | CG 00 67 03 05 |
| CG 71 34 04 05 | IL 70 39 01 06 | CG 02 20 11 06 | |

WCFM36

**Exhibit A**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2003 □

**Exhibit A**

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003

**Exhibit A**

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2003

**Exhibit A**

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

 © ISO Properties, Inc., 2003 □

**Exhibit A**

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**Exhibit A**

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

### b. Material Published With Knowledge Of Falsity

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

### c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

### e. Contractual Liability

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

### f. Breach Of Contract

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

### g. Quality Or Performance Of Goods – Failure To Conform To Statements

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

### h. Wrong Description Of Prices

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

### j. Insureds In Media And Internet Type Businesses

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

### k. Electronic Chatrooms Or Bulletin Boards

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

### l. Unauthorized Use Of Another's Name Or Product

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

 © ISO Properties, Inc., 2003 CG 00 01 12 04 □

**Exhibit A**

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

 © ISO Properties, Inc., 2003

**Exhibit A**

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003     ☐

**Exhibit A**

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

© ISO Properties, Inc., 2003

**Exhibit A**

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     (1) How, when and where the "occurrence" or offense took place;

     (2) The names and addresses of any injured persons and witnesses; and

     (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

     (1) Immediately record the specifics of the claim or "suit" and the date received; and

     (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

     (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

     (2) Authorize us to obtain records and other information;

     (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

© ISO Properties, Inc., 2003

CG 00 01 12 04 □

**Exhibit A**

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

 © ISO Properties, Inc., 2003 □

**Exhibit A**

## 6. Representations

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

## 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

## 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in **a.** above;

**(2)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

© ISO Properties, Inc., 2003
CG 00 01 12 04    □

**Exhibit A**

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

© ISO Properties, Inc., 2003

**Exhibit A**

**(1)** Equipment designed primarily for:

    **(a)** Snow removal;

    **(b)** Road maintenance, but not construction or resurfacing; or

    **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

© ISO Properties, Inc., 2003 **CG 00 01 12 04** ☐

**Exhibit A**

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;

            **(b)** Others trading under your name; or

            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2003

**Exhibit A**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Hart Forms & Services
Reorder No. 14-9234

 Copyright, Insurance Services Office, Inc., 1998

**Exhibit A**

COMMERCIAL GENERAL LIABILITY
CG 02 20 11 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FLORIDA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
ELECTRONIC DATA LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

A. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 20 days before the effective date of cancellation for any other reason, except we may cancel immediately if there has been:

    **(a)** A material misstatement or misrepresentation; or

    **(b)** A failure to comply with the underwriting requirements established by the insurer.

**b. For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

**(1)** Nonpayment of premium;

**(2)** The policy was obtained by a material misstatement;

**(3)** Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

**(4)** A substantial change in the risk covered by the policy; or

**(5)** The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

    **(a)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **(b)** 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

B. Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will mail the refund within 15 working days after the date cancellation takes effect. The cancellation will be effective even if we have not made or offered a refund.

 © ISO Properties, Inc., 2006 □

**Exhibit A**

**C.** The following is added and supersedes any other provision to the contrary:

**NONRENEWAL**

**1.** If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

**2.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

**Exhibit A**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTOR'S BLANKET ADDITIONAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

All of the terms, provisions, exclusions, and limitations of the coverage form apply except as specifically stated below.

**SECTION II - WHO IS AN INSURED** is amended to include as an insured any person or organization, called an additional insured in this endorsement:

1. Whom you are required to add as an additional insured on this policy under a written contract or agreement relating to your business; or

2. Who is named as an additional insured under this policy on a certificate of insurance.

However, the written contract, agreement or certificate of insurance must require additional insured status for a time period during the term of this policy and be executed prior to the "bodily injury", "property damage", "personal injury", or "advertising injury" giving rise to a claim under this policy.

If, however, "your work" was commenced under a letter of intent or work order, subject to a subsequent reduction to writing within 30 days from such commencement and with customers whose customary contracts require they be named as additional insureds, we will provide additional insured status as specified in this endorsement.

3. If the additional insured is:

    (a) An individual, their spouse is also an additional insured.

    (b) A partnership or joint venture, members, partners, and their spouses are also additional insureds.

    (c) A limited liability company, members and managers are also additional insureds.

    (d) An organization other than a partnership, joint venture or limited liability company, executive officers and directors of the organization are also additional insureds. Stockholders are also additional insureds, but only with respect to their liability as stockholders.

    (e) A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

The insurance provided to the additional insured is limited as follows:

1. That person or organization is only an additional insured with respect to liability arising out of:

    (a) Premises you own, rent, lease, or occupy, or

    (b) Your ongoing operations performed for that additional insured, unless the written contract or agreement or the certificate of insurance requires "your work" coverage (or wording to the same effect) in which case the coverage provided shall extend to "your work" for that additional insured.

    Premises, as respects this provision, shall include common or public areas about such premises if so required in the written contract or agreement.

    Ongoing operations, as respects this provision, does not apply to "bodily injury" or "property damage" occurring after:

    (1) All work including materials, parts or equipment furnished in connection with such work on the project (other then service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2003

CG 70 48 03 04

Page 1 of 2

**Exhibit A**

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

**2.** The limits of insurance applicable to the additional insured are the least of those specified in the written contract or agreement, or in the certificate of insurance or in the Declarations for this policy. If you also carry an Umbrella policy, and the written contract or agreement or certificate of insurance requires that the additional insured status also apply to such Umbrella policy, the limits of insurance applicable to the additional insured under this policy shall be those specified in the Declarations of this policy. The limits of insurance applicable to the additional insured are inclusive of and not in addition to the limits of insurance shown in the Declarations.

**3.** The additional insured status provided by this endorsement does not extend beyond the expiration or termination of a premises lease or rental agreement nor beyond the term of this policy.

**4.** Any person or organization who is an insured under the terms of this endorsement and who is also an insured under the terms of the GENERAL LIABILITY EXTENSION ENDORSEMENT, if attached to this policy, shall have the benefit of the terms of this endorsement if the terms of this endorsement are broader.

**5.** If a written contract or agreement or a certificate of insurance as outlined above requires that additional insured status be provided by the use of CG 20 10 11 85, then the terms of that endorsement, which are shown below, are incorporated into this endorsement as respects such additional insured, to the extent that such terms do not restrict coverage otherwise provided by this endorsement:

### ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS (FORM B)

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

Name of Person or Organization: Blanket Where Required by Written Contract, Agreement, or Certificate of Insurance that the terms of CG 20 10 11 85 apply

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

Copyright, Insurance Services Office, Inc., 1984

**CG 20 10 11 85**

The insurance provided to the additional insured does not apply to "bodily injury", "property damage", "personal injury", or "advertising injury" arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any professional services including but not limited to:

**1.** The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, design specifications; and

**2.** Supervisory, inspection, or engineering services.

Any coverage provided in this endorsement is excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent, or on any other basis unless the written contract, agreement, or certificate of insurance requires that this insurance be primary, in which case this insurance will be primary without contribution from such other insurance available to the additional insured.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc. 2003

CG 70 48 03 04

**Exhibit A**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CONTRACTORS GENERAL LIABILITY EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Under **SECTION I - COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** paragraph **2. EXCLUSIONS,** provisions **1.** through **7.** of this endorsement amend the policy as follows:

1.  **LIQUOR LIABILITY**

    Exclusion **c. Liquor Liability** is deleted.

2.  **POLLUTION - HEATING AND AIR CONDITIONING EQUIPMENT**

    Exclusion **f. Pollution** or any additional pollution exclusion attached to this Coverage Form shall not apply to "Bodily injury" if sustained within a building that is or was at any time owned or occupied by or rented or loaned to any insured and caused by smoke, fumes, vapor or soot from equipment used to heat or cool the building.

3.  **NONOWNED WATERCRAFT AND NONOWNED AIRCRAFT (HIRED, RENTED OR LOANED WITH PAID CREW)**

    Exclusion **g. Aircraft, Auto or Watercraft**, paragraph **(2)** is deleted and replaced with the following:

    **(2)** A watercraft you do not own that is:

        **(a)** Less than 51 feet long; and

        **(b)** Not being used to carry persons or property for a charge;

    Exclusion **g. Aircraft, Auto or Watercraft**, paragraph **(6)** is added as follows:

    **(6)** An aircraft that you do not own that is:

        **(a)** Hired;

        **(b)** Rented; or

        **(c)** Loaned to you,

    with paid crew for a period of five (5) consecutive days or less.

    Paragraph **(6)** does not apply if the insured has any other insurance for "bodily injury or "property damage" liability for such aircraft, whether such other insurance is primary, excess, contingent or on any other basis.

4.  **PREMISES ALIENATED**

    **A.** Exclusion **j. Damage to Property**, paragraph **(2)** is deleted.

    **B.** The following paragraph is also deleted from Exclusion **j. Damage to Property**:

    Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you

5.  **PROPERTY DAMAGE LIABILITY - ELEVATORS AND SIDETRACK AGREEMENTS**

    **A.** Exclusion **j. Damage to Property**, paragraphs **(3)**, **(4)**, and **(6)** do not apply to the use of elevators.

    **B.** Exclusion **k. Damage to Your Product** does not apply to:

        **1.** The use of elevators; or

        **2.** Liability assumed under a sidetrack agreement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

**Exhibit A**

6.  **PROPERTY DAMAGE LIABILITY - BORROWED EQUIPMENT**

   A. Exclusion **j. Damage to Property**, paragraph **(4)** does not apply to "property damage" to borrowed equipment while at a jobsite and not being used to perform operations.

   B. With respect to any one borrowed equipment item, provision **6.A.** above does not apply to "property damage" that exceeds $25,000 per occurrence or $25,000 annual aggregate.

7.  **PRODUCT RECALL EXPENSE**

   A. Exclusion **n. Recall Of Products, Work Or Impaired Property** does not apply to "product recall expenses" that you incur for the "covered recall" of "your product". This exception to the exclusion does not apply to "product recall expenses" resulting from:

      1. Failure of any products to accomplish their intended purpose;
      2. Breach of warranties of fitness, quality, durability or performance;
      3. Loss of customer approval or any cost incurred to regain customer approval;
      4. Redistribution or replacement of "your product", which has been recalled, by like products or substitutes;
      5. Caprice or whim of the insured;
      6. A condition likely to cause loss, about which any insured knew or had reason to know at the inception of this insurance;
      7. Asbestos, including loss, damage or clean up resulting from asbestos or asbestos containing materials;
      8. Recall of "your product(s)" that have no known or suspected defect solely because a known or suspected defect in another of "your product(s)" has been found.

   B. Under **SECTION III – LIMITS OF INSURANCE**, paragraph **3.** is replaced in its entirety as follows and paragraph **8.** is added:

      3. The Products-Completed Operations Aggregate Limit is the most we will pay for the sum of:

         a. Damages under **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** because of "bodily injury" and "property damage" included in the "products-completed operations hazard" and
         b. "Product recall expenses".

      8. Subject to paragraph **5.** above, $25,000 is the most we will pay for all "product recall expenses" arising out of the same defect or deficiency.

The insurance afforded by provisions **1.** through **7.** of this endorsement is excess over any valid and collectible insurance (including any deductible) available to the insured whether primary, excess or contingent, and **SECTION IV.**, paragraph **4. Other Insurance** is changed accordingly.

8.  **CONTRACTUAL LIABILITY - PERSONAL AND ADVERTISING INJURY**

   Under **SECTION 1 - COVERAGE B.**, paragraph **2. Exclusions**, paragraph **e. Contractual Liability** is deleted.

9.  **SUPPLEMENTARY PAYMENTS**

   Under **SECTION I - SUPPLEMENTARY PAYMENTS - COVERAGES A AND B,** paragraphs **1.b.** and **1.d.** are deleted and replaced with the following:

   b. Up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $500 a day because of time off from work.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

CG 70 49 09 05

**Exhibit A**

### 10. BROADENED WHO IS AN INSURED

**SECTION II - WHO IS AN INSURED** is deleted and replaced with the following:

1. If you are designated in the Declarations as:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

    e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

    a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees," other than either your "executive officers," (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insured for:

        **(1)** "Bodily injury" or "personal and advertising injury":

            **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

            **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of paragraph **(1) (a)** above;

            **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs **(1)(a)** or **(b)** above; or

            **(d)** Arising out of his or her providing or failing to provide professional health care services except as provided in provision **11.** of this endorsement.

        **(2)** "Property damage" to property:

            **(a)** Owned, occupied or used by;

            **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

        you, any of your "employees," "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

    c. Any person or organization having proper temporary custody of your property if you die, but only;

        **(1)** With respect to liability arising out of the maintenance or use of that property; and

        **(2)** Until your legal representative has been appointed.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

**Exhibit A**

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Form.

**e.** Your subsidiaries if:

    **(1)** They are legally incorporated entities; and

    **(2)** You own more than 50% of the voting stock in such subsidiaries as of the effective date of this policy.

If such subsidiaries are not shown in the Declarations, you must report them to us within 180 days of the inception of your original policy.

**f.** Any person or organization other than an architect, engineer, or surveyor, which requires in a "work contract" that such person or organization be made an insured under this policy. However, such person or organization shall be an insured only with respect to covered "bodily injury," "property damage," and "personal and advertising injury" that results from "your work" under that "work contract." The coverage afforded to such people or organization will continue only for a period of thirty (30) days after the effective date of the applicable "work contract" or, until the end of the policy term, whichever is earlier. However, if you report to us within the 30-day period stated above the name of the person or organization, as well as the nature of the "work contract" involved, the coverage afforded under this Coverage Form to such people or organization shall continue until the expiration of this policy. This paragraph **f.** does not apply if form CG 70 48, Contractors Blanket Additional Insured Endorsement, is attached to the policy.

**g.** Any person or organization to whom you are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to liability arising out of the maintenance or use of that part of any premises leased to you, including common or public areas about such premises if so required in the contract.

However, no such person or organization is an insured with respect to:

    **(1)** Any "occurrence" that takes place after you cease to occupy those premises; or

    **(2)** Structural alterations, new construction or demolition operations performed by or on behalf of such person or organization.

**h.** Any state or political subdivision but only as respects legal liability incurred by the state or political subdivision solely because it has issued a permit with respect to operations performed by you or on your behalf.

However, no state or political subdivision is an insured with respect to:

    **(1)** "Bodily injury", "property damage", and "personal and advertising injury" arising out of operations performed for the state or municipality; or

    **(2)** "Bodily injury" or "property damage" included within the "products-completed operations hazard."

**i.** Any person or organization who is the lessor of equipment leased to you to whom you are obligated by virtue of a written contact to provide insurance such as is afforded by this policy, but only with respect to their liability arising out of the maintenance, operation or use by you of such equipment.

However, no such person or organization is an insured with respect to any "occurrence" that takes place after the equipment lease expires.

**j.** Any architect, engineer, or surveyor engaged by you but only with respect to liability arising out of your premises or "your work."

However, no architect, engineer, or surveyor is an insured with respect to "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you, including:

    **(1)** The preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specification; or

    **(2)** Supervisory, inspection, or engineering services.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

　　　　　　　　　　　　　　　　　　CG 70 49 09 05

**Exhibit A**

This paragraph **j.** does not apply if form CG 70 48, Contractors Blanket Additional Insured Endorsement, is attached to the policy.

**k.** Any manager, owner, lessor, mortgagee, assignee or receiver of premises, including land leased to you, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises or land leased to you.

However, no such person or organization is an insured with respect to:

**(1)** Any "occurrence" that takes place after you cease to occupy that premises, or cease to lease the land; or

**(2)** Structural alteration, new construction or demolition operations performed by or on behalf of that person or organization.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded until the end of the policy period.

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization.

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**d.** Coverage **A** does not apply to "product recall expense" arising out of any withdrawal or recall that occurred before you acquired or formed the organization.

**4.** Any person or organization (referred to below as vendor) with whom you agreed, because of a written contract or agreement to provide insurance, is an insured but only with respect to "bodily injury" or "property damage" arising out of "your products" that are distributed or sold in the regular course of the vendor's business.

However, no such person or organization is an insured with respect to:

**a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement.

**b.** Any express warranty unauthorized by you;

**c.** Any physical or chemical change in "your product" made intentionally by the vendor;

**d.** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

**e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of "your products";

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of "your product";

**g.** "Your products" which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

This insurance does not apply to any insured person or organization from which you have acquired "your products", or any ingredient, part of container, entering into, accompanying or containing "your products".

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

**Exhibit A**

**11.  INCIDENTAL MALPRACTICE LIABILITY**

As respects provision **10.**, **SECTION II - WHO IS AN INSURED**, paragraph **2.a.(1)(d)** does not apply to any nurse, emergency medical technician or paramedic employed by you to provide medical or paramedical services, provided that you are not engaged in the business or occupation of providing such services, and your "employee" does not have any other insurance that would also cover claims arising under this provision, whether the other insurance is primary, excess, contingent or on any other basis.

Under **SECTION III - LIMITS OF INSURANCE**, provisions **12.** and **13.** of this endorsement amend the policy as follows:

**12.  AGGREGATE LIMITS PER PROJECT**

The General Aggregate Limit applies separately to each of your construction projects away from premises owned by or rented to you.

**13.  INCREASED MEDICAL PAYMENTS LIMIT AND REPORTING PERIOD**

  **A.**  The requirement under **SECTION I - COVERAGE C MEDICAL PAYMENTS** that expenses be incurred and reported to us within one year of the date of the accident is changed to three years.

  **B.**  **SECTION III - LIMITS OF INSURANCE**, paragraph **7.**, the Medical Expense Limit, is subject to all of the terms of **SECTION III - LIMITS OF INSURANCE** and is the greater of:

  **1.**  $10,000; or

  **2.**  The amount shown in the Declarations for Medical Expense Limit.

  **C.**  This provision **13.** does not apply if **COVERAGE C MEDICAL PAYMENTS** is excluded either by the provisions of the Coverage Form or by endorsement.

**14.  LEGAL LIABILITY (SPECIFIC PERILS)**

  **A.**  The word fire is changed to "specific perils" where it appears in:

  **1.**  The last paragraph of **SECTION I – COVERAGE A**, paragraph **2. Exclusions**;

  **2.**  **SECTION IV**, paragraph **4.b. Excess Insurance**.

  **B.**  The Limits of Insurance shown in the Declarations will apply to all damage proximately caused by the same event, whether such damage results from a "specific peril" or any combination of "specific perils."

  **C.**  The Damage To Premises Rented To You Limit described in **SECTION III - LIMITS OF INSURANCE**, paragraph **6.**, is replaced by a new limit, which is the greater of:

  **1.**  $300,000; or

  **2.**  The amount shown in the Declarations for Damage To Premises Rented To You Limit.

  **D.**  This provision **14.** does not apply if the Damage To Premises Rented To You Liability of **SECTION I - COVERAGE A** is excluded either by the provisions of the Coverage Form or by endorsement.

Under **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**, provisions **15.** through **17.** of this endorsement amend the policy as follows:

**15.  KNOWLEDGE OF OCCURRENCE**

Under **2. Duties In The Event Of Occurrence, Offense, Claim, Or Suit**, paragraph **a.** is deleted and replaced and paragraphs **e.** and **f.** are added as follows:

  **a.**  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim.  Knowledge of an "occurrence" or an offense by your "employee(s)" shall not, in itself, constitute knowledge to you unless one of your partners, members, "executive officers", directors, or managers has knowledge of the "occurrence" or offense.  To the extent possible, notice should include:

  **(1)**  How, when and where the "occurrence" or offense took place;

  **(2)**  The names and addresses of any injured persons and witnesses; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

**Page 6 of 9**                                                              CG 70 49 09 05

**Exhibit A**

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**e.** If you report an "occurrence" to your workers compensation carrier that develops into a liability claim for which coverage is provided by the Coverage Form, failure to report such an "occurrence" to us at the time of the "occurrence" shall not be deemed a violation of paragraphs **a.**, **b.**, and **c.** above. However, you shall give written notice of this "occurrence" to us as soon you become aware that this "occurrence" may be a liability claim rather than a workers compensation claim.

**f.** You must see to it that the following are done in the event of an actual or anticipated "covered recall" that may result in "product recall expense":

**(1)** Give us prompt notice of any discovery or notification that "your product" must be withdrawn or recalled. Include a description of "your product" and the reason for the withdrawal or recall;

**(2)** Cease any further release, shipment, consignment or any other method of distribution of like or similar products until it has been determined that all such products are free from defects that could be a cause of loss under the insurance.

## 16. UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS

Paragraph **6. Representations** is deleted and replaced with the following:

**6.    Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us;

**c.** We have issued this policy in reliance upon your representations; and

**d.** This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy

We will not deny coverage under this coverage part if you unintentionally fail to disclose all hazards existing as of the inception date of this policy. You must report to us any knowledge of an error or omission in the description of any premises or operations intended to be covered by the Coverage Form as soon as practicable after its discovery. However, this provision does not affect our right to collect additional premium or exercise our right of cancellation or nonrenewal.

## 17. BLANKET WAIVER OF SUBROGATION

Paragraph **8. Transfer of Rights Of Recovery Against Others To Us** is deleted and replaced with the following:

**8.** If the insured has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. However, if the insured has waived rights to recover through a written contract, or if "your work" was commenced under a letter of intent or work order, subject to a subsequent reduction to writing with customers whose customary contracts require a waiver, we waive any right of recovery we may have under this Coverage Form.

## 18. EXTENDED NOTICE OF CANCELLATION AND NONRENEWAL

Paragraph 2. b. of **A. Cancellation** of the **COMMON POLICY CONDITIONS** is deleted and replaced with the following:

**b.** 60 days before the effective date of the cancellation if we cancel for any other reason.

Under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS,** Paragraph **9. When We Do Not Renew** is deleted and replaced with the following:

**9.    When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 60 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

## Exhibit A

**19. MOBILE EQUIPMENT REDEFINED**

Under **SECTION V - DEFINITIONS**, paragraph **12.** "Mobile equipment", paragraph **f. (1)** does not apply to self-propelled vehicles of less than 1,000 pounds gross vehicle weight.

**20. LIMITED ELECTRONIC DATA LIABILITY**

**A.** The following paragraph is added to **SECTION III – LIMITS OF INSURANCE**:

Subject to **5.** above, the most we will pay under **Coverage A** for "property damage" because of all loss of "electronic data" arising out of any one "occurrence" is $25,000.

**B.** For this provision **20.** only, **SECTION V – DEFINITIONS**, paragraph **17.** "Property Damage" is replaced by the following:

**17.** " Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

**c.** Loss of "electronic data". Loss of "electronic data" means loss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate "electronic data", resulting from physical injury to tangible property. All such loss of "electronic data" shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

**21. DEFINITIONS**

**1.** **SECTION V – DEFINITIONS**, paragraph **4.** "Coverage territory" is replaced by the following definition:

"Coverage territory" means anywhere in the world with respect to liability arising out of "bodily injury," "property damage," or "personal and advertising injury," including "personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication provided the insured's responsibility to pay damages is determined in a settlement to which we agree or in a "suit" on the merits, in the United States of America (including its territories and possessions), Puerto Rico and Canada.

**2.** **SECTION V – DEFINITIONS** is amended by the addition of the following definitions:

"Covered recall" means a recall made necessary because you or a government body has determined that a known or suspected defect, deficiency, inadequacy, or dangerous condition in "your product" has resulted or will result in "bodily injury" or "property damage".

"Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media used with electronically controlled equipment.

"Product Recall expenses" mean only reasonable and necessary extra costs, which result from or are related to the recall or withdrawal of "your product" for:

**a.** Telephone and telegraphic communication, radio or television announcements, computer time and newspaper advertising;

**b.** Stationery, envelopes, production of announcements and postage or facsimiles;

**c.** Remuneration paid to regular employees for necessary overtime or authorized travel expense;

**d.** Temporary hiring by you or by agents designated by you of persons, other than your regular employees, to perform necessary tasks;

**e.** Rental of necessary additional warehouse or storage space;

**f.** Packaging of or transportation or shipping of defective products to the location you designate; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright Insurance Services Office, Inc., 2004

CG 70 49 09 05

**Exhibit A**

POLICY NUMBER: GL 2009278

COMMERCIAL GENERAL LIABILITY
CG 25 03 03 97

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED CONSTRUCTION PROJECT(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

| Designated Construction Projects: |
|---|
| ALL PROJECTS |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. For all sums which the insured becomes legally obligated to pay as damages caused by occurrences under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

2. The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

   Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Fire Damage and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

CG 25 03 03 97

Copyright, Insurance Services Office, Inc., 1996

Page 1 of 2

**Exhibit A**

D.  If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

E.  The provisions of Limits Of Insurance (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

Copyright, Insurance Services Office, Inc., 1996

CG 25 03 03 97

**Exhibit A**

## UMBRELLA LIABILITY POLICY

## AMERISURE MUTUAL INSURANCE COMPANY

| POLICY NUMBER | N/R | Dist.-Indiv. | Producer | | Date of Issue | Issuing Office | First Year |
|---|---|---|---|---|---|---|---|
| CU 2009380 | R | 846319-150 | CONSTRUCTION INS. | | 01-12-06 | 20 | 1999 |

| Direct Bill No: | Account No: 11034203 | Group Code: | Form of Business | Servicing Offices |
|---|---|---|---|---|

**ITEM 1.** Named Insured and Mailing Address

THE AUCHTER COMPANY (SEE ENDT. A)
C/O CONSTRUCTION INSURANCE
2110 HERSCHEL STREET
JACKSONVILLE, FL 3204

☐ Individual
☐ Partnership
☐ Joint Venture
☒ Organization (Other than Partnership or Joint Venture)

20

**ITEM 2.** Policy Period
From 01-01-2006 to 01-01-2007
12:01 A.M. standard time at your mailing address shown above

Premium Shown is Payable: $ 266,000.00

Tax:

Total: $ 266,000.00

Business Description:

GENERAL CONTRACTOR

**ITEM 3.** The Limits of Insurance, subject to all the terms of this policy are:

| | | |
|---|---|---|
| a. | Each Occurrence Limit | $ 25,000,000 |
| b. | Aggregates | |
| | Products - Completed Operations | $ 25,000,000 |
| | Bodily Injury By Disease | $ 25,000,000 |
| | All Other Hazards, except liability arising from the ownership, operations, maintenance entrustment or use of an "auto". | $ 25,000,000 |
| c. | Self-Insured Retention | $ 0 |

"THIS IS A TRUE AND EXACT DUPLICATE OF THE ORIGINAL."

SIGNED

**ITEM 4.** Premium Computation

(If not subject to audit) Flat Premium Charge      $ 266,000.00
(If subject to audit) Minimum Premium

| Estimated Exposure | Rate | Rating Basis | Total Estimated Premium |
|---|---|---|---|

**ITEM 5.** Endorsements Attached to this Policy:
M1085(06/00) , CU0001(12-04), IL0017(11-98), CU0003(03-05), CU0203(9-00), CU2118(09/00, CU2123(02-02), CU2127(12-04), CU2130(11-02), CU2142(12-04), CU7101(03-05)CU7319(03-05), CU7429(03-05),CU7430(03-05), CU 7436(03-05), CU7441(03-05), CU7445 (03-05),CU7453(03-05), CU7454(03-05), CU7608(03-05), IL7039(09/04), AN1086(09/04),AN1218(04-05), AN1221(05-05), AN 1230(01-06), ENDT. A

**ITEM 6.** Minimum Policy Charge     $3,500.00

In the event of cancellation by you, we shall retain no less than the amount shown above as the Minimum Policy Charge.

M-206 09 00

Countersigned by:

Authorized Representative

Amerisure®
Companies

**Exhibit B**

ENDORSEMENT NO.    A

# NAMED INSURED ENDORSEMENT

The Named Insured and Mailing Address portion in the Declarations are amended to read as follows:

THE AUCHTER COMPANY
AUCHTER/ELKINS, A JOINT VENTURE
AUCHTER/ELKINS/LODESTAR/PARRIS JOINT VENTURE

C/O CONSTRUCTION INSURANCE
2110 HERSCHEL STREET
JACKSONVILLE, FL 32204

POLICY NUMBER:   CU 2009380

INSURED:   THE AUCHTER COMPANY

**Exhibit B**

# SCHEDULE OF UNDERLYING INSURANCE

This Schedule of Underlying Insurance is part of Policy No.   CU 2009380

| CARRIER, POLICY NUMBER & POLICY PERIOD | TYPE OF POLICY | LIMITS OF LIABILITY | |
|---|---|---|---|
| **AMERISURE INSURANCE CO.** | | | |
| WC 1322211 01-01-06/07 | Standard Workers Compensation and Employers Liability | Employers Liability $100,000 $100,000 $500,000 | Bodily Injury by Accident-each accident Bodily Injury by Disease-each employee Bodily Injury by Disease-policy limit |
| **AMERISURE INSURANCE** | | | |
| GL 2009278 01-01-06/07 | General Liability | Combined Single Limit Liability $1,000,000 Split Limit Liability | each occurrence Bodily Injury-each occurrence Property Damage-each occurrence |
| | | Aggregates $2,000,000 $2,000,000 | General Aggregate Products-completed operations |
| **AMERISURE INSURANCE CO.** | | | |
| CA 1198185 01-01-06/07 | Automobile Liability | Combined Single Limit Liability $1,000,000 Split Limit Liability | each accident Bodily Injury-each person Bodily Injury-each accident Property Damage-each accident |

M-208 (10-86)

**Exhibit B**

COMMERCIAL LIABILITY UMBRELLA
CU 00 01 12 04

# COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

(1) The amount we will pay for the "ultimate net loss" is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

Exhibit B

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

This exclusion does not apply to the extent that valid "underlying insurance" for the liquor liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. E.R.I.S.A.

Any obligation of the insured under the Employees' Retirement Income Security Act (E.R.I.S.A.), and any amendments thereto or any similar federal, state or local statute.

### f. Auto Coverages

**(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto"; or

**(2)** Any loss, cost or expense payable under or resulting from any first party physical damage coverage; no-fault law; personal injury protection or auto medical payments coverage; or uninsured or underinsured motorist law.

### g. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2003

**Exhibit B**

This exclusion does not apply to liability assumed by the insured under an "insured contract".

With respect to injury arising out of a "covered auto", this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits. For the purposes of this insurance, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

This exclusion does not apply to the extent that valid "underlying insurance" for the employer's liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance.

**h.  Employment-Related Practices**

"Bodily injury" to:

(1)  A person arising out of any:

    (a)  Refusal to employ that person;

    (b)  Termination of that person's employment; or

    (c)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2)  The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**i.  Pollution**

(1)  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

(2)  "Pollution cost or expense".

This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance".

**j.  Aircraft Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1)  A watercraft while ashore on premises you own or rent;

(2)  A watercraft you do not own that is:

    (a)  Less than 50 feet long; and

    (b)  Not being used to carry persons or property for a charge;

(3)  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft.

(4)  The extent that valid "underlying insurance" for the aircraft or watercraft liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" or "property damage". Coverage provided will follow the provisions, exclusions and limitations of the "underlying insurance" unless otherwise directed by this insurance; or

(5)  Aircraft that is:

    (a)  Chartered by, loaned to, or hired by you with a paid crew; and

    (b)  Not owned by any insured.

 © ISO Properties, Inc., 2003 □

**Exhibit B**

### k. Racing Activities

"Bodily injury" or "property damage" arising out of the use of "mobile equipment" or "autos" in, or while in practice for, or while being prepared for, any prearranged professional or organized racing, speed, demolition, or stunting activity or contest.

### l. War

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### m. Damage To Property

"Property damage" to:

**(1)** Property:

   **(a)** You own, rent, or occupy including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; or

   **(b)** Owned or transported by the insured and arising out of the ownership, maintenance or use of a "covered auto".

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(1)(b)**, **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a written Trailer Interchange agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### n. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### o. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### p. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### q. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

 © ISO Properties, Inc., 2003 CU 00 01 12 04  □

**Exhibit B**

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**r. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**s. Professional Services**

"Bodily injury" or "property damage" due to rendering or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

(3) Engineering services, including related supervisory or inspection services;

(4) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

(5) Any health or therapeutic service treatment, advice or instruction;

(6) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

(7) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

(8) Body piercing services;

(9) Services in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;

(10) Law enforcement or firefighting services; and

(11) Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

**t. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

(1) The amount we will pay for the "ultimate net loss" is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**Exhibit B**

## 2. Exclusions

This insurance does not apply to:

**a.** "Personal and advertising injury":

**(1) Knowing Violation Of Rights Of Another**

Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**(2) Material Published With Knowledge Of Falsity**

Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**(3) Material Published Prior To Policy Period**

Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**(4) Criminal Acts**

Arising out of a criminal act committed by or at the direction of the insured.

**(5) Contractual Liability**

For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

**(a)** Liability for damages that the insured would have in the absence of the contract or agreement.

**(b)** Liability for false arrest, detention or imprisonment assumed in a contract or agreement.

**(6) Breach Of Contract**

Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**(7) Quality Or Performance Of Goods – Failure To Conform To Statements**

Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**(8) Wrong Description Of Prices**

Arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**(9) Infringement Of Copyright, Patent, Trademark Or Trade Secret**

Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**(10) Insureds In Media And Internet Type Businesses**

Committed by an insured whose business is:

**(a)** Advertising, broadcasting, publishing or telecasting;

**(b)** Designing or determining content of websites for others; or

**(c)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**(11) Electronic Chatrooms Or Bulletin Boards**

Arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**(12) Unauthorized Use Of Another's Name Or Product**

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**(13) Pollution**

Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(14) Employment-Related Practices**

To:

**(a)** A person arising out of any:

**(i)** Refusal to employ that person;

**(ii)** Termination of that person's employment; or

**(iii)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

© ISO Properties, Inc., 2003                    CU 00 01 12 04    □

**Exhibit B**

**(b)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(i), (ii),** or **(iii)** above is directed.

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

**(15) Professional Services**

Arising out of the rendering or failure to render any professional service. This includes but is not limited to:

**(a)** Legal, accounting or advertising services;

**(b)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;

**(c)** Engineering services, including related supervisory or inspection services;

**(d)** Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

**(e)** Any health or therapeutic service treatment, advice or instruction;

**(f)** Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement or personal grooming;

**(g)** Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;

**(h)** Body piercing services;

**(i)** Services in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;

**(j)** Law enforcement or firefighting services; and

**(k)** Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

**(16) War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(a)** War, including undeclared or civil war;

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(c)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**b.** "Pollution cost or expense".

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend, when the duty to defend exists:

**a.** All expenses we incur.

**b.** Up to $2000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "occurrence" we cover. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All costs taxed against the insured in the "suit".

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

© ISO Properties, Inc., 2003

**Exhibit B**

**2.** When we have the right but not the duty to defend the insured and elect to participate in the defense, we will pay our own expenses but will not contribute to the expenses of the insured or the "underlying insurer".

**3.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments, or settlements, or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** Except for liability arising out of the ownership, maintenance, or use of "covered autos":

**a.** If you are designated in the Declarations as:

**(1)** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**(2)** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**(3)** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**(4)** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**(5)** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

© ISO Properties, Inc., 2003
CU 00 01 12 04    □

**Exhibit B**

**b.** Each of the following is also an insured:

**(1)** Your "volunteer workers" only while performing duties related to the conduct of your business, your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(a)** "Bodily injury" or "personal and advertising injury":

**(i)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" in the course of his or her employment or performing duties related to the conduct of your business or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(ii)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(a)(i)** above; or

**(iii)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(a)(i)** or **(ii)** above.

**(b)** "Property damage" to property:

**(i)** Owned, occupied or used by,

**(ii)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**(2)** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**(3)** Any person or organization having proper temporary custody of your property if you die, but only:

**(a)** With respect to liability arising out of the maintenance or use of that property; and

**(b)** Until your legal representative has been appointed.

**(4)** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**c.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**(1)** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**(2)** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**(3)** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**2.** Only with respect to liability arising out of the ownership, maintenance, or use of "covered autos":

**a.** You are an insured.

**b.** Anyone else while using with your permission a "covered auto" you own, hire, or borrow is also an insured except:

**(1)** The owner or anyone else from whom you hire or borrow a "covered auto". This exception does not apply if the "covered auto" is a trailer or semi-trailer connected to a "covered auto" you own.

**(2)** Your "employee" if the "covered auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a "covered auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a "covered auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a "covered auto" owned by him or her or a member of his or her household.

 © ISO Properties, Inc., 2003  □

**Exhibit B**

**(6)** "Employees" with respect to "bodily injury" to any fellow "employee" of the insured arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business.

**c.** Anyone liable for the conduct of an insured described above is also an insured, but only to the extent of that liability.

**3.** Any additional insured under any policy of "underlying insurance" will automatically be an insured under this insurance.

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance required by the contract, less any amounts payable by any "underlying insurance".

Additional insured coverage provided by this insurance will not be broader than coverage provided by the "underlying insurance".

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made, "suits" brought, or number of vehicles involved; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for the sum of all "ultimate net loss" under:

**a.** Coverage **A,** except "ultimate net loss" because of "bodily injury" or "property damage" arising out of the ownership, maintenance or use of a "covered auto"; and

**b.** Coverage **B.**

**3.** Subject to **2.** above, the Each Occurrence Limit is the most we will pay for the sum of all "ultimate net loss" under Coverage **A** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**4.** Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all "ultimate net loss" because of all "personal and advertising injury" sustained by any one person or organization.

The Aggregate Limit, as described in Paragraph **2.** above, applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – CONDITIONS

### 1. Appeals

If the "underlying insurer" or insured elects not to appeal a judgment in excess of the "retained limit", we may do so at our own expense. We will be liable for taxable costs, pre- and postjudgment interest and disbursements.

### 2. Bankruptcy

#### a. Bankruptcy Of Insured

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

#### b. Bankruptcy Of Underlying Insurer

Bankruptcy of the "underlying insurer" will not relieve us of our obligations under this Coverage Part.

However, this insurance will not replace the "underlying insurance" in the event of bankruptcy or insolvency of the "underlying insurer". This insurance will apply as if the "underlying insurance" were in full effect.

### 3. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

 © ISO Properties, Inc., 2003 CU 00 01 12 04    □

**Exhibit B**

c. You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**4. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**5. Other Insurance**

a. This insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis. This condition will not apply to insurance specifically written as excess over this Coverage Part.

When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

b. When this insurance is excess over other insurance, we will pay only our share of the "ultimate net loss" that exceeds the sum of:

    **(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(2)** The total of all deductible and self-insured amounts under all that other insurance.

**6. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**7. Representations Or Fraud**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us;

c. We have issued this policy in reliance upon your representations; and

d. This policy is void in any case of fraud by you as it relates to this policy or any claim under this policy.

**8. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

 © ISO Properties, Inc., 2003

**Exhibit B**

**9. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**10. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**11. Loss Payable**

Liability under this Coverage Part shall not apply unless and until the insured or insured's "underlying insurer" has become obligated to pay the "retained limit". Such obligation by the insured to pay part of the "ultimate net loss" shall have been previously determined by a final settlement or judgment after an actual trial or written agreement between the insured, claimant, and us.

**12. Transfer Of Defense**

When the underlying limits of insurance have been used up in the payment of judgments or settlements, the duty to defend will be transferred to us. We will cooperate in the transfer of control to us of any outstanding claims or "suits" seeking damages to which this insurance applies which would have been covered by the "underlying insurance" had the applicable limit not been used up.

**13. Maintenance Of Underlying Insurance**

The "underlying insurance" listed in the schedule of "underlying insurance" in the declarations shall remain in full effect throughout the policy period except for reduction of the aggregate limit due to payment of claims, settlement, or judgments.

Failure to maintain "underlying insurance" will not invalidate this insurance. However, this insurance will apply as if the "underlying insurance" were in full effect.

You must notify us as soon as practicable when any "underlying insurance" is no longer in effect.

**14. Expanded Coverage Territory**

**a.** If a "suit" is brought in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from defending the insured, the insured will initiate a defense of the "suit". We will reimburse the insured, under Supplementary Payments, for any reasonable and necessary expenses incurred for the defense of a "suit" seeking damages to which this insurance applies, that we would have paid had we been able to exercise our right and duty to defend.

If the insured becomes legally obligated to pay sums because of damages to which this insurance applies in a part of the "coverage territory" that is outside the United States of America (including its territories and possessions), Puerto Rico or Canada, and we are prevented by law, or otherwise, from paying such sums on the insured's behalf, we will reimburse the insured for such sums.

**b.** All payments or reimbursements we make for damages because of judgments or settlements will be made in U.S. currency at the prevailing exchange rate at the time the insured became legally obligated to pay such sums. All payments or reimbursements we make for expenses under Supplementary Payments will be made in U.S. currency at the prevailing exchange rate at the time the expenses were incurred.

**c.** Any disputes between you and us as to whether there is coverage under this policy must be filed in the courts of the United States of America (including its territories and possessions), Canada or Puerto Rico.

**d.** The insured must fully maintain any coverage required by law, regulation or other governmental authority during the policy period, except for reduction of the aggregate limits due to payments of claims, judgments or settlements.

Failure to maintain such coverage required by law, regulation or other governmental authority will not invalidate this insurance. However, this insurance will apply as if the required coverage by law, regulation or other governmental authority was in full effect.

© ISO Properties, Inc., 2003
CU 00 01 12 04

**Exhibit B**

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

4. "Coverage territory" means anywhere in the world with the exception of any country or jurisdiction which is subject to trade or other economic sanction or embargo by the United States of America.

5. "Covered auto" means only those "autos" to which "underlying insurance" applies.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work", or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

   g. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraphs f. and g. do not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   (2) That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

   (3) That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a "covered auto" over a route or territory that person or organization is authorized to serve by public authority.

 © ISO Properties, Inc., 2003

**Exhibit B**

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft or watercraft;

**b.** While it is in or on an aircraft or watercraft; or

**c.** While it is being moved from an aircraft or watercraft to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft or watercraft.

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2003    CU 00 01 12 04    □

**Exhibit B**

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Pollution cost or expense" means any loss, cost or expense arising out of any:

**a.** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**b.** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**17.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured; or

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials.

**18.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

With respect to "covered autos", property damage also includes "pollution cost or expense", but only to the extent that coverage exists under the "underlying insurance" or would have existed but for the exhaustion of the underlying limits.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**19.** "Retained limit" means the available limits of "underlying insurance" scheduled in the declarations or the "self-insured retention", whichever applies.

**20.** "Self-insured retention" means the dollar amount listed in the declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

**21.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

**22.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**Exhibit B**

**23.** "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

**24.** "Underlying insurance" means any policies of insurance listed in the declarations under the schedule of "underlying insurance".

**25.** "Underlying insurer" means any insurer who provides any policy of insurance listed in the schedule of "underlying insurance".

**26.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**27.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**28.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2003

CU 00 01 12 04     □

**Exhibit B**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**Exhibit B**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

A. Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

2. **Cancellation Of Policies In Effect**

a. **For 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(2) 45 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

(a) A material misstatement or misrepresentation; or

(b) A failure to comply with the underwriting requirements established by the insurer.

b. **For More Than 90 Days**

If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) The policy was obtained by a material misstatement;

(3) Failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

(4) A substantial change in the risk covered by the policy; or

(5) The cancellation is for all insureds under such policies for a given class of insureds.

If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

(b) 45 days before the effective date of cancellation if we cancel for any of the other reasons stated in Paragraph **2.b.**

B. Condition **10. When We Do Not Renew** is replaced by the following:

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

 Copyright, Insurance Services Office, Inc., 2000

**Exhibit B**

COMMERCIAL LIABILITY UMBRELLA
CU 73 19 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDED LIMITS OF LIABILITY

**All other terms, provisions, exclusions, and limitations of the policy apply except as specifically stated below.**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

**SECTION III - LIMITS OF INSURANCE** is deleted and replaced with the following:

**SECTION III - LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below is the most we will pay regardless of the number of:

    a. Insureds;

    b. Claims made, "suits" brought, or number of vehicles involved; or

    c. Persons or organizations making claims or bringing "suits".

2. We will pay those sums, subject to the coverage provided by this policy, which exceed the:

    a. Limits of liability of the applicable "underlying insurance"; or

    b. The "self-insured retention" listed in item **3.(c)** of the Declarations, whichever applies.

3. The Limit of Insurance shown in item **3.(a)** of the Declarations is the most we will pay for the sum of all "ultimate net loss" under this policy because of all "bodily injury", "property damage" and "personal and advertising injury" arising out of any one "occurrence".

4. The Aggregate Limits of Insurance shown in item **3.(b)** of the Declarations is the most we will pay for the sum of all "ultimate net loss" paid under this policy as a result of the insured's liability arising out of:

    a. The "products-completed operations hazard";

    b. Occupational disease of your employees; or

    c. All other hazards, except liability arising from the ownership, operations, maintenance, entrustment or use of a "covered auto". Use includes "loading or unloading".

    This limit applies separately to **4.a., b.** and **c.** above.

5. If the aggregate limits of liability of the "underlying insurance" policy have been exhausted, this policy will apply as underlying (primary) insurance.

6. The Limits of Insurance provided by this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

CU 73 19 03 05

**Exhibit B**

## IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

THE PENINSULA AT ST. JOHN'S CENTER
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

v.

THE AUCHTER COMPANY, SKANSKA
USA BUILDING, INC., ARCH INSURANCE
COMPANY, ARCH REINSURANCE
COMPANY, XL SPECIALTY INSURANCE
COMPANY, XL REINSURANCE
AMERICA, INC., STEVEN FELLER, P.E.,
P.L., and IBA CONSULTANTS, INC.,

    Defendants.

_____/

ARCH INSURANCE COMPANY, XL
SPECIALTY INSURANCE COMPANY, XL
REINSURANCE AMERICA, INC., ARCH
REINSURANCE COMPANY, and THE
AUCHTER COMPANY,

    Third-Party Plaintiffs,

v.

A.A. PITTMAN & SONS CONCRETE
COMPANY, INC., CECO CONCRETE
CONSTRUCTION, LLC, and STERLING
DULA ARCHITECTURAL PRODUCTS,

    Third-Party Defendants.

_____/

CECO CONCRETE CONSTRUCTION, LLC,

    Additional Third-Party (Fourth-Party)
    Plaintiff,

v.

CASE NO.: 2013-CA-6582
DIVISION: CV-H

(Consolidated with)
CASE NO.: 2013-CA-7176
DIVISION: CV-D

**Exhibit C**

LIBERTY STEEL ERECTORS, INC.,

    Additional Third-Party Defendant.

_____/

STERLING DULA ARCHITECTURAL PRODUCTS,

    Additional Third-Party Plaintiff,

v.

RICE ENGINEERING, INC.,

    Additional Third-Party Defendant.

_____/

## FINAL JUDGMENT

THIS CAUSE was heard upon the Joint Motion to Approve Settlement Agreement and Enter Final Judgment filed by Plaintiff The Peninsula at St. John's Center Condominium Association, Inc. and Defendant The Auchter Company. The Court considered the motion, reviewed the Settlement Agreement, and is otherwise fully advised in the premises. Accordingly, it is ordered and adjudged as follows:

    1.    Judgment is entered in favor of the Plaintiff, the Peninsula at St. John's Center Condominium Association and against Defendant The Auchter Company.

    2.    The Plaintiff, the Peninsula at St. John's Center Condominium Association, shall recover from Defendant $8,500,000.00 which shall bear interest at the rate provided by section 55.03, Florida Statutes, for all of which let execution issue forthwith.

**Exhibit C**

Done and entered in Duval County, Florida, on this ___ day of July , 2021.

_____
Circuit Court Judge

All Counsel of Record.

**Exhibit C**